### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA
### CASE NO.: 09-CV-60412-HUCK/O'SULLIVAN

JULIE FITZPATRICK, On Behalf of Herself
And All Others Similarly Situated,

       Plaintiff,

v.

GENERAL MILLS, INC. and YOPLAIT
USA, INC.,

       Defendants.

_____/

### ORDER ON MOTION FOR CLASS CERTIFICATION

      This matter is before the Court on Plaintiff's Motion for Class Certification (D.E. #29), filed August 3, 2009.  The Court has carefully considered the parties' briefs, supporting affidavits and pertinent exhibits, the oral argument on December 14, 2009, and is otherwise fully advised.  For the reasons stated below, certification is granted for Plaintiff's FDUTPA claim.

## I.    BACKGROUND

      General Mills began advertising and selling Yo-Plus in July 2007.  (Decl. of Benjamin D. Mand in Supp. of Opp'n to Pl.'s Mot. for Class Cert. ("Mand Decl.") ¶ 5.)  Yo-Plus is ordinary yogurt[1] supplemented with the "probiotic"[2] bacterium *Bifodobacterium animalis* ssp. *lactis* ("Bb-12"), inulin,[3] and vitamins A and D.  (*Id.*; Menon Decl. ¶ 5.)  The mixture of Bb-12 and inulin in

---

[1] Yogurt is a dairy product created by adding the *Lactobacillus bulgaricus* and *Streptococcus thermophilus* strains of bacteria to milk, which then ferments into a solid substance: yogurt. (Decl. of Ravi D. Menon in Supp. of Opp'n to Pl.'s Mot. for Class Cert. ("Menon Decl.") ¶ 4; *see also* National Yogurt Association, *Live & Active Culture Yogurt*, http://aboutyogurt.com/index.asp?bid=5 (last visited January 11, 2010).)

[2] Probiotic bacteria ("probiotics") can be loosely defined as live microorganisms that confer a health benefit when consumed in sufficient quantities.  (Decl. of Patrick M. Gillevet in Supp. of Pl.'s Mot. for Class Cert. ("Gillevet Decl.") ¶ 6.)  The parties seem to agree that although research into the health benefits of probiotics continues, *see* Menon Decl. ¶ 12 ("much is still to be learned about probiotic bacteria") and Gillevet Decl. ¶ 9 ("medical understanding of the functions and uses of probiotics in humans has just begun"), probiotics do provide health benefits to humans in some instances.  (*See, e.g.*, Pl.'s Mot. for Class Cert. 3 ("The use of probiotic bacteria is rooted in legitimate medical science.").)

[3] General Mills markets the inulin in Yo-Plus as a "natural fiber" derived from chicory root that "enhances the actions of probiotics" by serving as "food for the probiotic [sic] in the digestive track."  (Decl. of Timothy G. Blood

Yo-Plus—what General Mills has trademarked as "Optibalance"—allegedly provides habitual consumers with digestive health benefits, by aiding in the promotion of digestive health.[4] (Menon Decl. ¶ 4 ("These additional ingredients . . . aid in promoting digestive health.").) General Mills does not add Bb-12 or inulin to its normal Yoplait brand yogurt.  Thus, the digestive health benefits conferred by eating regular Yoplait yogurt are limited to those associated with traditional yogurt, which, according to General Mills, has only been shown to "[alleviate] the symptoms of lactose insensitivity in lactose-sensitive individuals." (*Id.*)  Yo-Plus, on the other hand, contains two ingredients not found in normal Yoplait yogurt; ingredients that, according to General Mills, "aid in promoting digestive health." (*Id.* ¶¶ 5-6 ("these added ingredients . . . promote digestive health when included in a yogurt product such as YoPlus").) In short, General Mills contends that regularly eating Yo-Plus aids in the promotion of digestive health in ways that eating normal Yoplait yogurt does not. *See* Mand. Decl., Ex. 1 at 3 ("Yoplait recently launched Yo-Plus, which is a yogurt with digestive benefits.").  Yo-Plus competes with Dannon's Activia brand of probiotic yogurt ("Activia"), which also allegedly provides special digestive health benefits, and is the leader in the probiotic yogurt market. (Mand Decl. ¶ 7.)

General Mills commenced a nationwide marketing campaign to introduce Yo-Plus to the United States market in July 2007. (*Id.* ¶ 5.)  The campaign, which endeavored to promote Yo-Plus' "key benefit of digestive health," (*Id.*, Ex. 1 at 20), consisted of television commercials, print promotional materials with coupons, in-store advertising, promotions to health professionals, internet advertising, as well as the claims made on Yo-Plus packaging. (*See* Mand. Decl. ¶¶ 8, 35-89.)  Between July 2007 and March 2009, when this case was filed, General Mills aired a series of eight different television commercials for Yo-Plus. (*Id.* ¶ 37.) One commercial introduces Yo-Plus as "a delicious new yogurt with special added cultures and fiber that naturally help regulate your digestion, which makes every day more positive." (Blood

---

in Supp. of Pl.'s Mot. for Class Cert. ("Blood Decl."), Exs. 3, 26.)  General Mills contends that "inulin is an important source of fiber in its own right" due to its "widely recognized digestive health and laxation effects." (Menon Decl. ¶ 20).  At the oral argument on December 14, 2009, Plaintiff argued that inulin does not provide the digestive health benefits associated with typical fiber consumption. *See also* Pl.'s Mot. for Class Cert. at 2 ("If inulin does anything, or does anything in the small amounts at issue here, it merely promotes bacteria growth.").

[4] General Mills contends that the "concept of digestive health encompasses a wide range of physiological functions associated with the ingestion, digestion, absorption of food, and the excretion of waste." (Menon Decl. ¶ 11.)  At the oral argument on December 14, 2009, Plaintiff stipulated to this description of "digestive health."

Decl., Ex. 2, *Plus Scale;* Mand Decl., Ex. 14.)  Another declares that "Yo-Plus' unique blend of probiotic cultures plus fiber help your body regulate digestive health naturally."  (Blood Decl., Ex. 2, *Direct Response Version One*; Mand Decl., Ex. 19.)  In addition to commercials, General Mills circulated print advertisements for Yo-Plus containing coupons.  (Mand Decl. ¶ 49.)  Some of these print advertisements make challenges like "[t]ry it for ten days and see how different you feel" and "[l]ove it or it's free."  (*See, e.g.,* Mand Decl., Exs. 38, 42.)  Many of the print advertisements prominently display the word "probiotics" and "digestive" and emphasize the unique flavors, functional aspects, and good taste of Yo-Plus, and the fact that Yo-Plus contains fiber.  (*See, e.g. id.*, Ex. 39.)  Additionally, the YoPlus.com website states, *inter alia*, that "Yo-Plus has a probiotic culture called [Bb-12] . . . clinically shown to support digestive health."  (*Id.*, Ex. 59.)  Further, Yo-Plus' current packaging materials claim, for example, that "Yo-Plus contains special probiotic cultures and fiber to help naturally regulate your digestive health."  (*Id.*, Ex. 6.)  The inside of the original Yo-Plus packaging, which was revised in September 2008, states that one should "[e]at Yo-Plus every day to help maintain a balance of good-for-you bacteria in your digestive system and regulate digestive health."  (*Id.*, Ex. 7; *Id.* ¶¶ 30-31.)  The same packaging also explains that Optibalance is "a unique blend of beneficial bacteria (Bifidobacterium lactis BB-12) and a natural fiber (chicory root extract) that together help regulate digestive health" and "crowd out the unfriendly bacteria in your system and promote digestive health."  (*Id.*, Ex. 7.)

In early 2008, Plaintiff was exposed to General Mills' representations about Yo-Plus' purported digestive health benefits via television commercials, coupons, and seeing the product packaging in various stores.  (Fitzpatrick Dep. 27-29.)  At that time, Plaintiff was a semi-regular consumer of Activia, and had been since late November 2007.  (*Id.* 28.)  However, Plaintiff decided to try Yo-Plus because she thought its taste and other characteristics would surpass those of Activia, but still promote her digestive health in ways that normal yogurt would not.  (*Id.* 27-28.)  Over the next twelve months, Plaintiff bought and consumed approximately 24 four-pack cartons of Yo-Plus (two cartons per month), meaning that she ate an average of approximately two servings of Yo-Plus per week.  (*Id.* 33:2-12.)  Plaintiff does not remember if she consumed Yo-Plus daily for ten days.  (*Id.* 208:3-8.)  She claims that her digestive health was "the same

before, during and after" eating Yo-Plus.  (*Id.* 30:20-24.)  She contends that General Mills' digestive health benefit claim has allowed General Mills to sell Yo-Plus "for an average of 44% more than Yoplait Original brand yogurt."  (Pl.'s Mot. for Class Cert. ("Pl.'s Mot.") at 9 n.12.) Plaintiff alleges that eating Yo-Plus does not provide any digestive health benefits that cannot be obtained from eating normal yogurt and that General Mills' claim to the contrary is unsubstantiated, false, misleading, and reasonably likely to deceive the public.  (Compl. ¶ 3.) Plaintiff seeks class certification under Rule 23 for her Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Fla. Stat. § 501.201 *et seq.*) claim and Florida common law breach of express warranty claim.  The proposed class is "[a]ll persons who purchased YoPlus in the State of Florida."  (Compl. ¶ 48.)  Plaintiff also seeks appointment as class representative and her counsel as class counsel.  (Pl.'s Mot. at 2.)

## II.   LEGAL STANDARD

To certify a class action, "the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b)."  *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004).  To satisfy Rule 23(a), the case must meet four requirements:  numerosity, commonality, typicality, and adequacy of representation.  Fed. R. Civ. P. 23(a).  To satisfy Rule 23(b), the case must meet one of the three requirements set forth therein.  *See* Fed. R. Civ. P. 23(b).  In this case, the only requirement of Rule 23(b) at issue is Rule 23(b)(3), also known as the predominance requirement, which requires a finding that common questions of law or fact predominate over individual questions, and that class action treatment is superior to other available methods of adjudication.  Plaintiff claims the putative class satisfies all four requirements of Rule 23(a), as well as Rule 23(b)(3)'s predominance requirement.  General Mills, however, claims that the putative class members bought Yo-Plus for different reasons, at different times, at different prices, and obtained different results, and that therefore, each Plaintiff's claims "necessitate individualized proof, precluding certification."  (Def.'s Opp'n to Pl.'s Mot. for Class Cert. ("Opp'n") at 14.)

## III.   ANALYSIS

Whether this case is appropriate for class treatment depends, in part, on the elements of the two causes of action each putative class member must prove.

### a.    The FDUTPA.

"A consumer claim for damages under the FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. 2d DCA 2006), *review denied*, 962 So.2d 335 (Fla. 2007).  The FDUTPA provides that the statute should be "construed liberally" to, *inter alia*, "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202; *see also Samuels v. King Motor Co.*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001) ("[T]he Legislature . . . has mandated that FDUTPA is to be liberally construed.").  "[B]y promulgating the FDUTPA the Florida legislature has clearly intended as a matter of public policy . . . to create a simplified statutory cause of action which bestows additional substantive remedies on the citizens of this state to recover economic damages related solely to a product or service purchased in a consumer transaction infected with unfair or deceptive trade practices or acts."  *Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*, 693 So. 2d 602, 606 (Fla. 2nd DCA 1997).

### i.    A Deceptive Act or Unfair Practice.

The FDUTPA does not define what constitutes a deceptive act or unfair practice, but provides that courts give "due consideration and great weight" to Federal Trade Commission and federal court interpretation of section 5(a)(1) of the Federal Trade Commission Act in interpreting those terms.  Fla. Stat. § 501.204.  Generally, an unfair practice is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'"  *Samuels*, 782 So. 2d at 499.  Likewise, a deceptive act occurs where there is "a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment."  *Zlotnick v. Premier Sales Group, Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (citing *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003)); *see also Davis v. Powertel, Inc.*, 775 So. 2d 971, 974 (Fla. 1st DCA 2006) (explaining that federal courts have held "a deceptive practice is one that is likely to mislead consumers").

General Mills argues that every plaintiff seeking damages under the FDUTPA "must prove that *a given General Mills advertising statement* about YoPlus *seen by that consumer* was likely to mislead a consumer acting reasonably under the circumstances to her detriment." (Opp'n 14 (emphasis added).)  In other words, General Mills claims that a plaintiff must have been subjected to each specific representation, omission, or practice which the plaintiff claims was likely to mislead an objective reasonable consumer; a plaintiff cannot cite a representation, omission, or practice to which she was not personally exposed.  General Mills provides no authority for this exacting standing requirement and the Court has found none.  Although the Court agrees that a plaintiff must be exposed to the misrepresentation or unfair practice relied upon in a claim for damages, it is not persuaded that a plaintiff should be forced to rely only on those representations, omissions, or practices experienced firsthand to prove that a defendant engaged in a deceptive act.[5]  Applied here, General Mills' restrictive approach would mean the putative class is disharmonious because each plaintiff was likely exposed to a unique array of advertising statements, and would therefore be forced to rely on a slightly divergent pool of evidence to establish that General Mills engaged in the same deceptive act.  Of course, there is little doubt that each putative class member was exposed, at a minimum, to the alleged misrepresentations common to both versions of the Yo-Plus packaging (*e.g.*, the claim that the product "helps naturally regulate . . . digestive health.") (*See* Mand Decl., Ex. 5 ("Helps Naturally Regulate Digestive Health with Optibalance") *and* Ex. 7 ("Yo-Plus contains special prebiotic cultures and fiber to help naturally regulate your digestive health").  But as the saying goes, there are many ways to skin a cat.  In this case, General Mills employed a number of devices, jingles, and turns of phrase to convey the common message that eating Yo-Plus aids in

---

[5] As the Florida Supreme Court explained in *PNR, Inc.*, the FDUTPA's private right of action is not limited to those plaintiffs able to demonstrate multiple, violative acts against multiple parties; it also permits an individual plaintiff to recover damages related to "a single transaction infected with a deceptive act."  842 So. 2d at 776.  A deceptive act can be established by showing "a representation, omission, *or practice* that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Zlotnick*, 480 F.3d at 1284 (emphasis added).  Thus, because a deceptive act can be established by evidencing a "practice," which is defined as "a habitual or customary action or way of doing something," *American Heritage Dictionary of the English Language* (4th ed. 2000), it follows that a plaintiff, who may rely on "a single transaction infected with a deceptive act" to recover under the FDUTPA, may reach outside the circumstances of a single transaction to establish a "practice" constituting a deceptive act.  Otherwise, a plaintiff could never prove the existence of deceptive act in the form of a "practice" based on a single transaction, which appears to be inconsistent with *PNR, Inc.*  In short, a plaintiff is not limited to proving the existence of a deceptive act based solely on how it happens to manifest itself in a specific "infected" transaction.

the promotion of digestive health in ways that eating normal yogurt does not. (*See, e.g.*, Mand Decl., Ex. 1 ("'digestive health' is the primary reason consumers would buy the product as described.'") It is that precise claim—communicated in one way or another to every purchaser of Yo-Plus in Florida—that Plaintiff alleges is deceptive. Just as "[a] brick is not a wall," *see* McCormick on Evidence, § 185 (Broun 6th ed. 2009), whether a defendant's representation, omission, or practice is likely to mislead an objective reasonable consumer cannot always be resolved by looking at the representation, omission, or practice in a vacuum. General Mills concedes as much. (*See* Opp'n at 15 ("The liability determination must rest on the actual words and images used in the advertisement . . . and the context in which those words and images are used.").) Additional evidence, such as "the circumstances" surrounding a particular representation, omission, or practice—which inevitably includes, for example, other related representations, omissions, or practices of the defendant—is often relevant to determine whether the specific act is likely to mislead an objective reasonable consumer. *Zlotnick*, 480 F.3d at 1284. Accordingly, to satisfy the first element for a consumer claim for damages under the FDUTPA, each plaintiff would need to prove he or she was exposed to General Mills' allegedly deceptive message that eating Yo-Plus promotes digestive health in ways that eating normal yogurt cannot. However, a plaintiff seeking to prove that General Mills' digestive health message is "deceptive" may rely on any evidence concerning that message, including advertisements to which he or she was not personally exposed.

          **ii.   Causation.**

General Mills argues that the FDUTPA requires each plaintiff to prove that General Mills' deceptive act motivated his or her decision to buy Yo-Plus. Plaintiff, however, argues that the FDUTPA does not require actual reliance by a particular plaintiff, but simply a showing that an objective reasonable consumer would have been deceived under the same circumstances.

According to Florida's First District Court of Appeals, the causation element "does not require subjective evidence of reliance, as would be the case with a common law action for fraud." *Davis*, 766 So. 2d at 974. "The question is not whether the plaintiff actually relied on the alleged deceptive trade practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances." *Id.* General Mills, however, contends that *Davis*

is "an outlier" and that the FDUTPA has "causation/reliance" elements.  (Opp'n at 17, n.3; *Id.* at 21, n.4.)  In support, General Mills cites a number of cases which cursorily suggest that the FDUTPA's causation requirement demands that a consumer actually rely on the deceptive practice.  *See, e.g., Kais v. Mansiana Ocean Residences, LLC*, 2009 U.S. Dist. Lexis 25417 (S.D. Fla. Mar. 25, 2009) (08-CV-21492-FAM) (dismissing FDUTPA claim because "[n]owhere . . . does Plaintiff state that these alleged deceptive acts caused him to enter into the contract . . . or caused him to act differently in any way . . . ."); *Philip Morris USA Inc. v. Hines*, 883 So. 2d 292, 294 (Fla. 4th DCA 2003) (explaining that "we question whether *Davis* gives fair consideration to the principle of causation within section 501.211(2) . . . ."); *Black Diamond Props., Inc. v. Haines*, 940 So. 2d 1176, 1179, n.1 (Fla. 5th DCA 2006) ("We too question the lack of analysis in [*Davis*] of the causation element . . . .").  The Eleventh Circuit, however, has resolved this issue.  *See Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 Fed. Appx. 565, 567 (11th Cir. June 3, 2009) (holding that "the FDUTPA does not require a plaintiff to prove actual reliance on the alleged conduct.") (citing *State, Office of the Att'y Gen. v. Commerce Commercial. Leasing, LLC*, 946 So. 2d 1253, 1258 (Fla. 1st DCA 2007) ("A deceptive or unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue.")).  In other words, the Eleventh Circuit has said that the FDUTPA does not require a plaintiff to prove the misrepresentation caused them to do *anything*; rather, the causation requirement is resolved based on how an objective reasonable person would behave under the circumstances.  The Court recognizes that *Cold Stone* does not give extensive consideration to the FDUTPA's causation requirement, but the holding is unambiguous and an interpretation of Florida law that is binding on this Court.  *See also Zlotnick*, 480 F.3d at 1284 (explaining that a plaintiff must show "probable, not possible, deception" that is "likely to cause injury to a reasonable relying consumer.") (*citing Millennium Commc'ns & Fulfillment, Inc. v. Office of the Att'y Gen.*, 761 So.2d 1256, 1263 (Fla. 4th DCA 2000) ("the new standard considers as material only deceptions that are likely to cause injury to a reasonable relying consumer, whereas the old standard reached deceptions that a consumer might have considered important")).  Thus, to satisfy the FDUTPA's

causation requirement, each plaintiff is required to prove only that the deceptive practice would—in theory—deceive an objective reasonable consumer.

### iii.    Actual Damages.

Finally, an FDUTPA claim cannot stand unless the plaintiff alleges actual damages.  Fla. Stat. § 501.211 ("In any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs . . . .").  To succeed, each plaintiff is required to prove that he or she paid more for the product than it was worth.  *Rollins, Inc.*, 951 So.2d at 869 ("the measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value . . . .") (citations omitted).

### b.    The Breach of Express Warranty Claim.

Under Florida's UCC, consumers may sue for breach of express warranty if a seller makes a false promise about goods, and the consumer relied on that promise in deciding to purchase the goods.  *See* Fla. Stat. § 672.313 ("Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.").  Plaintiff claims that proof of actual reliance on General Mill's claim that Yo-Plus improves digestive health is not necessary, while General Mills insists it is.

Under Florida law, only an "affirmation of fact or promise" that "becomes part of the basis of the bargain creates an express warranty."  Fla. Stat. § 672.313(1)(a).  General Mills' promise that Yo-Plus helps improve digestive health, therefore, could only create an express warranty if that "affirmation of fact or promise" was "part of the basis" that caused a consumer to purchase Yo-Plus.  Put differently, there is no express warranty that could be breached unless a plaintiff actually relied on General Mills' promises about Yo-Plus in reaching a decision to purchase it.  Accordingly, each plaintiff must show that General Mills' alleged misrepresentations concerning Yo-Plus' digestive health benefits was "part of the basis" in his or her decision to buy Yo-Plus.[6]

---

[6] In support of her argument that Florida's UCC does not require actual reliance, Plaintiff cites a Louisiana federal district court opinion predicting whether Florida courts would require actual reliance to state a claim for breach of an express warranty.  *See Lennar Homes, Inc. v. Masonite Corp.*, 32 F. Supp. 2d 396, 399-400 (E.D. La. 1998) (finding that Florida law is that "no particular reliance on [express warranties] must be shown in order to weave them into the agreement").  *Lennar* reasons that excluding an actual reliance requirement for breach of express warranty claims is

c.      **Rule 23(a)'s Requirements Are Satisfied.**

All of Rule 23(a)'s prerequisites—numerosity, commonality, typicality, and adequacy of representation—must be satisfied to grant class certification.  In this case, each requirement is met for both the FDUTPA and breach of express warranty claims.

i.      **The Class is Too Numerous to Join.**

Rule 23(a)(1)'s numerosity requirement demands that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  General Mills does not dispute that the putative class satisfies Rule 23(a)(1)'s numerosity requirement.  Plaintiff has provided evidence that General Mills sold approximately two million packages of Yo-Plus to Florida consumers in 2008 and 2009, and estimates that proposed class contains "many thousands of members."  (Compl. ¶ 50; Blood Decl., Ex. 21, Ex. 3 thereto (showing that General Mills sold approximately $5.47 million worth of Yo-Plus at an average price of $2.56 per package, which works out to approximately 2.13 million packages sold to Florida consumers); *see also* Opp'n at 10 (acknowledging "more than 1 million separate purchases of the product" in Florida).)  Barring the exceedingly unlikely scenario that the average Yo-Plus consumer in Florida purchased over 50,000 packages of Yo-Plus, it is readily apparent that more than forty Florida citizens purchased Yo-Plus, which is the point at which "joinder of all members is impracticable" and Rule 23(a)(1)'s numerosity requirement satisfied.  Fed. R. Civ. P. 23(a)(1); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009).  Accordingly, Plaintiff has provided sufficient factual support for the Court to conclude that Rule 23(a)(1)'s numerosity requirement is met.  *See Vega*, 564 F.3d at 1267 ("a plaintiff still bears the burden of making

---

necessary to maintain a distinction between torts for fraud and breach of contract claims.  However, *Lennar* disregards the actual reliance requirement only for cases involving express written warranties.  *Id.* at 397 ("the reliance element must be confined under Florida law to cases which do not involve express written warranties.").  In other words, according to Plaintiff's own authority, actual reliance is required for all cases except those involving "express written warranties."  The Court is not convinced that *Lennar* is correct that Florida courts would disregard the reliance element in cases involving express written warranties.  *See, e.g. Weimar v. Yacht Club Point Estates, Inc.*, 223 So.2d 100, 104 (Fla. App. 1969) (explaining that a cause of action for breach of warranty requires "[r]eliance upon the representations by the seller or skill and judgment of the seller where the action is based upon express warranty or warranty of fitness for a particular purpose" and making no carve-out for express written warranties).  Further, *Lennar* is distinguishable because the express warranty in this case is not an express written warranty in the same vein as that in *Lennar*.  The warranty in *Lennar* was a signed, contractual agreement memorializing an express agreement between a buyer and seller, whereas here the express warranty is a non-negotiated, public advertisement with both oral and written representations.

*some* showing, affording the district court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement.").

### ii.   Common Issues Exist.

Rule 23(a)(2)'s commonality requirement demands "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). It is a "relatively light burden" that "'does not require that all the questions of law and fact raised by the dispute be common' . . . or that the common questions of law or fact 'predominate' over individual issues." *Vega*, 564 F.3d at 1268 (citations omitted). Rather, it simply requires "that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009). Here, the commonality requirement is readily satisfied for both the FDUTPA and breach of express warranty claims. Plaintiff claims this case involves at least eight common issues: (1) whether General Mills had adequate substantiation for its claims prior to making them; (2) whether the claims discussed above are true, or are misleading or reasonably likely to deceive; (3) whether General Mills' alleged conduct violates public policy; (4) whether the alleged conduct constitutes violations of the laws; (5) whether General Mills engaged in false or misleading advertising; (6) whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss; (7) whether Plaintiff and Class members are entitled to an award of punitive damages; and (8) whether Plaintiff and Class members are entitled to declaratory and injunctive relief. (Compl. ¶ 51.)

Whether General Mills' claim that Yo-Plus aids in the promotion of digestive health is "deceptive" is a mixed question of law and fact common to every class member seeking damages under the FDUTPA. Even though a few consumers likely purchased Yo-Plus for reasons unrelated to Yo-Plus' purported digestive health benefits, such as the consumers that purchased Yo-Plus because it "has no high fructose corn syrup" or "it was on sale," (Opp'n at 19), Rule 23(a) only requires "at least one issue" that will affect "all *or a significant number* of the putative class members." (*Id.* (emphasis added).) After extensive review of the record and the affidavits, the Court is convinced that a significant number of Yo-Plus consumers purchased Yo-Plus because of its purported digestive health benefit, which is, as General Mills' marketing documents plainly state, Yo-Plus' primary distinguishing feature. (*See, e.g.*, Mand Decl., Ex. 1 at

20, 26 ("'digestive health' is the primary reason consumers would buy the product as described"); ("taste and texture are relatively unimportant"); ("the key benefit of digestive health appears to more effectively drive Yo-Plus purchase"); *see also* Decl. of Thomas Maronick, Ex. 5 at 21-22 (Yoplait report explaining the "brand benefit" to YoPlus is that "YoPlus helps digestive issues"); (Yoplait report reflecting that across three Yo-Plus commercials, average of 75% of viewers felt commercials conveyed idea that Yo-Plus "helps digestive issues"); Mand. Decl., Ex. 3 at 22 ("[D]igestive health is top of mind for many consumers after watching these spots.").) General Mills makes much ado about consumers' varied perceptions of its advertisements and the messages therein, citing shortcomings in the success of isolated advertisements tested with survey groups to prove that a substantial number of consumers did not receive a primary digestive health message from the advertisements.  *See generally* Decl. of Gary Ford in Supp. of Def.'s Opp'n to Pl.'s Mot. for Class Cert.  The Court is not convinced that the bulk of Florida consumers—particularly those that decided to buy Yo-Plus, which are the only persons this class definition captures—are so inattentive or simple-minded, especially after repeated exposure, to fail to absorb the prominent digestive health benefit message common to General Mills' Yo-Plus advertisements.  Try as it might, General Mills cannot evade the unmistakable fact that the objective—and realization—of its marketing campaign was to present Yo-Plus to Florida consumers as a product that, like Activia, aids in the promotion of digestive health.  The Court is not persuaded that the bulk of Florida consumers made the decision to purchase Yo-Plus, which is priced significantly higher than regular Yoplait yogurt, for reasons unrelated to its purported digestive health benefits.  Indeed, the most obvious reason why consumers would buy Yo-Plus is that it promises something extra, and that something extra is a digestive health benefit.

Moreover, because each plaintiff seeking damages under the FDUTPA is only required to prove that General Mills' conduct would deceive an objective reasonable consumer, and not that the deceptive act motivated their particular purchase decision—*see supra* III(a)(ii)—the putative class members would rely on the same pool of evidence to prove their claims, which includes, *inter alia*, General Mills' statements concerning Yo-Plus' distinctive digestive health benefits.

Also integral to the determination of whether General Mills' statements are deceptive under the FDUTPA is the scientifically complex question of whether Yo-Plus does, in fact, work

as advertised, and the related question of whether General Mills possessed sufficient evidence to confirm its claims about Yo-Plus' purported digestive health benefits before making them. The evidence necessary to resolve this question is the same for each plaintiff and therefore common to the class. The other questions described by Plaintiff as being common to the class revolve around this central, common question, but are also common among the FDUTPA plaintiffs.

Commonality is also satisfied for the breach of express warranty claim. This is because whether Yo-Plus actually conforms to General Mills' description as a product that aids in the promotion of digestive health is an issue shared among all claimants seeking recovery under Fla. Stat. § 672.313. The complex scientific evidence bearing on this issue is identical for all plaintiffs, each of whom must disprove General Mills' claim that Yo-Plus aids in the promotion of digestive health. Accordingly, the Court finds that the commonality requirement is satisfied because Plaintiff's complaint presents significant "questions of law or fact common to the proposed class." Fed. R. Civ. P. 23(a)(2).

### iii.    Plaintiff Is Typical of the Putative Class.

A class may be certified only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement is satisfied if "the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Mohawk Indus., Inc.*, 568 F.3d at 1358 (internal citations omitted). "The typicality requirement may be satisfied despite substantial factual differences . . . when there is a strong similarity of legal theories." *Id.* Here, Plaintiff's claims are typical of the putative class members' claims because the legal theories and supporting facts relied upon by both Plaintiff and the putative class members are substantially similar.

First, Plaintiff seeks recovery under the FDUTPA on the basis that (1) General Mills engaged in a deceptive act by claiming, through various methods, that eating Yo-Plus aids in the promotion of digestive health in ways that eating normal yogurt does not, (2) General Mills' deception would deceive an objective reasonable consumer, and (3) that she was damaged by paying more for Yo-Plus than it was worth. Each putative class member hoping to recover under the FDUTPA must prove the same three elements as Plaintiff, with damages being the only

divergent factual characteristic between Plaintiff and the putative class members.  In all other regards, evidence supporting Plaintiff's FDUTPA claim is probative of each putative class member's FDUTPA claim.  Plaintiff's testimony that she switched to Yo-Plus from Activia in part because of a longstanding preference for Yoplait's taste and other characteristics, *see* Fitzpatrick Dep. at 57:12-17, does not make her atypical of the class.  In fact, as Plaintiff testified, she switched to Yo-Plus because General Mills marketed Yo-Plus as an alternative to Activia that offered the same digestive health benefits, but with Yoplait characteristics.  (*Id.* at 27:23-28:1.)  Absent General Mills' representations that Yo-Plus aids in the promotion of digestive health, Plaintiff would have continued to forego her preference for Yoplait's taste and eat Activia for its purported digestive health benefits.  This is evidenced by the simple fact that Plaintiff ate Activia rather than regular Yoplait prior to the introduction of Yo-Plus.  Plaintiff's FDUTPA claim, therefore, is typical of the putative class members' claims because all derive from the same allegedly deceptive act—General Mills' alleged deceptive message about Yo-Plus' purported digestive health benefits—and is based on the same legal theory; violation of the FDUTPA.

Second, Plaintiff alleges (1) that General Mills violated Florida's UCC by making false promises about the digestive health benefits conferred by eating Yo-Plus and (2) she relied on those promises in purchasing Yo-Plus.  Like Plaintiff, each putative class member would be required to prove that Yo-Plus does not conform to General Mills' description as a product that aids in the promotion of digestive health.  Each putative class member, like Plaintiff, would also be required to prove General Mills' promises were "part of the basis" that spurred him or her to purchase Yo-Plus.  Plaintiff's breach of express warranty claim, therefore, like Plaintiff's FDUTPA claim, is exemplary of the putative class members' claims, and thus also satisfies Rule 23(a)(3)'s typicality requirement.

### iv.    Plaintiff and Plaintiff's Counsel Are Adequate Representatives.

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  As an initial matter, it is worth noting that the proposed class in this case is adequately defined and readily ascertainable, although the Court is, *sua sponte*, adjusting the class definition to capture only those Florida consumers who

purchased Yo-Plus to obtain its claimed digestive health benefit.  *See infra* IV (redefining class as "all persons who purchased Yo-Plus in the State of Florida to obtain its claimed digestive health benefit"). This class definition precisely identifies those persons whose interests will be affected by this litigation.

"The adequacy-of-representation requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008) (citations and internal quotations omitted).  The Court is unaware of any conflicts of interest between Plaintiff and either the putative class members or Plaintiff's lead counsel.  Additionally, the Court finds that Plaintiff has been diligent in bringing this suit, and, based on her deposition testimony, appears reasonable, proactive, and sufficiently familiar and invested with the case to be an adequate class representative.  Finally, Plaintiff's lead counsel, Coughlin Stoia LLP, is a firm specializing in class actions whose experience and qualifications, and briefs and interactions with this Court in this case, establish that it is qualified to serve as class counsel.  Accordingly, the Court finds that Plaintiff and Plaintiff's counsel can and will adequately prosecute this case, and therefore both Rule 23(a)(4) and Rule 23(g)'s adequacy requirements are met.

For these reasons, the Court finds that the proposed class satisfies each of Rule 23(a)'s requirements and is therefore appropriate for certification under Rule 23(a).

**d.      Rule 23(b)'s Requirements Are Satisfied.**

To obtain certification, Plaintiff must also satisfy one of the requirements of Rule 23(b).  Plaintiff contends that certification is appropriate under Rule 23(b)(3).  A class action may be certified under Rule 23(b)(3) if (1) "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

**i.      Common Issues Predominate.**

Predominance is "perhaps the central and overriding prerequisite for a Rule (23)(b)(3) class."  *Vega*, 564 F.3d at 1278.  It is "far more demanding than Rule 23(a)'s commonality

requirement." *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997). "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Mohawk*, 568 F.3d at 1358. "Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)." *Id.*

Plaintiff argues that the predominant issue in this case is "whether it is true that Yo-Plus is proven to provide the stated health benefits, as it advertises." (Mot. for Class Cert. at 14.) Whether Yo-Plus does, in fact, aid in the promotion of digestive health when consumed regularly, as General Mills has consistently declared to the public since Yo-Plus' introduction in 2007, is critical to every putative class member's theory that General Mills violated the FDUTPA. As explained above, recovery under the FDUTPA does not hinge on whether a particular plaintiff actually relied on General Mills' claims about Yo-Plus' alleged digestive health benefits, or personally observed every claim relied upon to prove that General Mills' conduct was deceptive. *See supra* III(a). Rather, whether General Mills' representations are "deceptive" under the FDUTPA, and whether that allegedly deceptive conduct would deceive an objective reasonable consumer, are common issues for all the putative class members, amenable to classwide proof. *See supra* III(c)(ii). The only individual issue among the putative class members, at least as to the FDUTPA claim, is the scope of damages. The heart of this case, however, is not calculating the premium paid for Yo-Plus by particular persons.[7] To the contrary, the dispute centers on the scientifically complex question of whether Yo-Plus provides a digestive health benefit, and if General Mills had an adequate basis to disseminate that message to Florida consumers. It is this thorny issue—rife with contested, bleeding-edge scientific evidence—that would overwhelmingly dominate (and hence preclude) every plaintiff's case were they forced to litigate independently. The determination of whether Yo-Plus works as advertised is also relevant to each putative class member claiming that General Mills' promise of

---

[7] In any event, "the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate." *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003).

digestive health benefits induced them to buy Yo-Plus and that General Mills breached an express warranty by providing a product that does not provide the promised digestive health benefits.  This is because if General Mills had the evidence to support its claim that Yo-Plus aids in the promotion of digestive health, then the claims of every plaintiff seeking recovery for breach of express warranty on the basis that Yo-Plus is not proven to provide a digestive health benefit necessarily fail.

General Mills contends that common issues do not predominate for three reasons.[8]  First, General Mills claims the putative class members cannot present common proof that General Mills engaged in a deceptive practice in violation of the FDUTPA, or breached an express warranty, because each plaintiff was exposed to a mix of advertising statements, and the truthfulness of each advertising statement must be assessed separately.  General Mills' theory is that there is no uniform representation among its advertising statements concerning Yo-Plus' purported digestive health benefit; each is sufficiently distinctive, due to "unique wording and other characteristics" so as to require independent review.  (Opp'n at 15.)  The Court is not persuaded.  The digestive health benefit of Yo-Plus is a common and conspicuous theme found in every Yo-Plus advertisement that the Court has reviewed.  For example, General Mills claims it "downplayed digestive health" over the course of the eight Yo-Plus commercials it aired between 2007 and 2009.  (Opp'n at 5.)  However, the audio scripts from the commercials reveal the "downplay" was insignificant.  Digestive health, and Yo-Plus' "special" and/or "probiotics" cultures are highlighted, usually first, in every commercial.  (*See* Mand Decl. Exs. 14-15, 17-22.) There is no avoiding that digestive health is a consistent and prominent theme among all the various mediums employed by General Mills to market Yo-Plus.  (Opp'n at 15 ("[E]ach Yo-Plus advertisement that Plaintiff attacks may mention digestive health either explicitly or implicitly using different wording . . . .")  The digestive health message, apparent on the face of each advertisement standing alone, is even more obvious when the Yo-Plus advertisements are viewed in conjunction and repeatedly.  Given the near certainty that every consumer was exposed to the alleged misrepresentations on Yo-Plus' packaging, there is little doubt that the bulk of putative

---

[8]  At times, General Mills appears to intermingle the commonality and predominance inquiries, which is a "fundamental misapplication of Rule 23."  *Vega*, 564 F.3d at 1269.

class members were likely exposed to a mix of advertising statements.  However, the variations in how different advertising statements address Yo-Plus' purported digestive health benefit are not so significant as to preclude a fact finder from evaluating whether General Mills' overarching theme that Yo-Plus aids in the promotion of digestive health is "deceptive."  As explained earlier, this is a common issue for all plaintiffs.  Accordingly, because each plaintiff may rely on any representation, omission, or practice to prove that General Mills' digestive health message is false and "deceptive"—*see supra* III(a)(i)—the Court finds that the putative class can present common proof as to whether General Mills engaged in a deceptive act or unfair practice.  Therefore, a finding of predominance is not precluded.

Second, General Mills argues that the predominance requirement is not met because different plaintiffs may have purchased Yo-Plus for different reasons, some entirely unrelated to Yo-Plus' purported digestive health benefits.  This is more of an attack on commonality than a direct challenge to predominance.  Nevertheless, as explained above, a plaintiff seeking to recover under the FDUTPA need not allege that the deceptive act motivated his or her decision to purchase Yo-Plus, but only that an objective reasonable person would have been deceived by it.  *See supra* III(a)(ii).  Whether an objective reasonable person would have been deceived by a deceptive act is a question susceptible to classwide proof.  However, the breach of express warranty claim is not.  An express warranty is created where a specific promise becomes part of the bargain.  *See supra* III(b).  To recover, a plaintiff must identify the particular promise that created the express warranty breached by the defendant.  Individual issues would clearly predominate because much effort would be spent on what representation(s) spurred a particular putative class member to buy Yo-Plus.   Unlike the FDUTPA claim, each putative class member's breach of express warranty claim, even after resolution of the bulky classwide issue of whether Yo-Plus works as advertised, would still require "a great deal of individualized proof" and "individualized legal points" to succeed, and thus is "not suitable for class certification under Rule 23(b)(3)."  *Mohawk*, 568 F.3d at 1358.  Accordingly, individual issues would predominate as to the breach of express warranty claims, but not the FDUTPA claims.

Third, General Mills objects to a finding of predominance because the scope of each putative class member's damages may vary, and some may not have been damaged at all if Yo-

Plus provided the expected digestive health benefit. Whether a particular putative class member paid a premium for Yo-Plus is an individualized issue not subject to classwide proof. However, Rule 23(b)'s predominance requirement can be satisfied even when there are individualized damage issues. *Allapattah Servs., Inc.*, 333 F.3d at 1261 (11th Cir. 2003) ("Based upon the facts of this case, we believe that Exxon's liability to the class for breach of the dealer agreements predominated over the individual issues relating to damages."). The Court is cognizant of the difficulties inherent in calculating the extent of each putative class member's injuries for such low-value claims, but is persuaded that a workable solution can be fashioned. General Mills' other objection, that Yo-Plus might have worked for some consumers, does not preclude a finding of predominance; that question is largely encompassed by the predominant—and, according to Plaintiff, binary—issue of whether science supports General Mills' claim that Yo-Plus aids in the promotion of digestive health. This argument does not preclude a finding that issues common to the putative class predominate over the individual issues.

In sum, the Court finds that Rule 23(b)'s predominance requirement is satisfied as to the FDUTPA claim because individual issues do not predominate. The FDUTPA claim rises or falls based predominantly on issues for which classwide proof is appropriate; an answer to the paramount question of whether Yo-Plus works as advertised will directly and substantially impact every class member's liability case and entitlement to relief under the FDUTPA. *See Klay*, 382 F.3d at 1255 ("Common issues of fact and law 'predominate' if they have direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief."). After resolution of the class issues, each putative class member would only have to prove that he or she paid a premium for Yo-Plus for the promised digestive health benefit to be entitled to damages under the FDUTPA. Individual issues, therefore, will not predominate. However, individual issues will predominate for the breach of express warranty claim because each plaintiff is required to provide an individualized theory of causation, "which strongly militates against a finding of predominance." *Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 230 (S.D. Fla. 2002). Accordingly, the predominance requirement is only satisfied for the FDUTPA claim.

ii.     **A Class Action Is a Superior Method of Adjudication.**

Four factors, among others, color whether a class action is a superior method of adjudication: "(a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).  After consideration of these and other factors, the Court concludes that a class action is a superior method of adjudication.

Plaintiff claims a class action is superior because no individual plaintiff will litigate this case individually.  The Court agrees.  The amount in controversy for any individual plaintiff (something in the range of one dollar per purchase) is simply too insignificant to make the claim worth pursuing for any litigant or attorney, particularly given the enormous expense associated with litigating the complex question whether General Mills' claims that Yo-Plus aids in the promotion of digestive health are supported by science.  *See Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (claims valued at $100 mean "most of the plaintiffs would have no realistic day in court if a class action were not available").  This predicament also suggests a class action is a superior method of adjudication, particularly given Rule 23(b)(3)(a), because each class member has a negligible financial interest in the litigation, and is better served by having the minimal control offered by a class action than the alternative of no control over a non-existent law suit.  As to Rule 23(b)(3)(a) and (b), the Court is unaware of other litigation concerning Yo-Plus and finds that a Florida federal district court is an appropriate forum to adjudicate a case concerning Florida consumers.  The Court recognizes that certification raises some "likely difficulties" under Rule 23(b)(3)(d).  For example, identifying those consumers that bought Yo-Plus, and of that group, who paid a premium for it, will not be an easy process.  Likewise, calculating the appropriate compensation for each plaintiff will require some effort.  Nevertheless, these issues are not insurmountable, s*ee, e.g.,* Decl. of Jeffrey Leibell in Supp. of Pl.'s Mot., and this difficulty is not "in itself a sufficient basis to prevent certification of a class," *Klay*, 382 F.3d at 1272.

The Court is convinced that no plaintiff will proceed with this case absent certification and that certification is consistent with both Florida and federal public policy.  The FDUTPA's stated goal to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce," Fla. Stat. § 501.202, will not be advanced without certification.  Likewise, as the Supreme Court has explained, in drafting Rule 23, "the Advisory Committee had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (citations omitted).  Requiring the putative class members to petition government agencies to investigate or seek refunds, as General Mills suggests, would simply circumvent these public policies.

In light of the alternative to class certification, and keeping in mind the purposes for which Rule 23 was promulgated, the Court finds that the superiority requirement is satisfied, and therefore certification is appropriate under Rule 23(b)(3).

## IV.   CONCLUSION

The Court finds that Plaintiff has satisfied the requirements of Rule 23 for the FDUTPA claim and therefore class certification is granted as to that claim only.  For the reasons set forth above, the class being certified is "all persons who purchased Yo-Plus in the State of Florida to obtain its claimed digestive health benefit."  This class is subject to decertification or adjustment as appropriate.  Additionally, Plaintiff's request for appointment as class representative is granted, as is her request to appoint her counsel as class counsel.

DONE in Chambers, Miami, Florida, January 11, 2010.

_____
Paul C. Huck
United States District Judge

**Copies furnished to:**
Counsel of Record

21